UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:  26-21771-CV-MIDDLEBROOKS

MICHEL AVILA DE LA NUEZ
also known as
MICHEL AGUILA DE LA RUIZ,

  Petitioner,

v.

DEPARTMENT OF HOMELAND SECURITY,
*et al.*,

  Respondents.

_____/

## ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

**THIS CAUSE** is before the Court on the *pro se* Petition for Writ of Habeas Corpus ("Petition") (DE 1) brought pursuant to 28 U.S.C. § 2241 by Petitioner Michel Avila De La Nuez also known as Michel Aguila De La Ruiz ("Petitioner").  Respondents have filed an Response (DE 9) with supporting exhibits opposing the Petition, claiming Petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1226(c).  Upon consideration of the filings by the Parties, pertinent portions of the record, and relevant authorities, for the reasons discussed below, the Petition is **DENIED**.

## I.  BACKGROUND

Petitioner is a native and citizen of Cuba.  (DE 9 at 1 citing (DE 9-1, Ex. A at 1)).  On October 3, 2008, Petitioner entered the United States at Miami, Florida, without inspection aboard a vessel.  (*Id.* citing (DE 9-2, Ex. B at 2)).  On that same date, after being encountered by Customs and Boarder Protection ("CBP") officials, Petitioner was found to be in violation of Section 212(a)(6)(A)(i) and 212(a)(7)(A)(i) of the Immigration and Nationality Act ("INA") as an alien

who was present in the United States without being admitted or paroled and who, at the time of application for admission, was not in possession of a valid unexpired immigrant visa, reentry permit, boarder crossing card, or other valid entry document required by the INA. (*Id.* citing (DE 9-2, Ex. B at 2)). On that same date, after being processed by immigration officials, Petitioner was issued a Notice to Appear ("NTA") charging him with inadmissibility under Section 212(a)(6)(A)(i) and 212(a)(7)(A)(i) of the INA and released on his own recognizance. (*Id.* citing (DE 9-3, Ex. C at 1–3; DE 9-2, Ex. B at 2)). The NTA was not filed with the immigration court, therefore, removal proceedings were not initiated against Petitioner under this NTA. (*Id.* at 2 citing (DE 9-3, Ex. C at 1–3)).

On January 29, 2009, Petitioner was paroled. (*Id.* citing (DE 9-5, Ex. E at 1)). On February 11, 2011, Petitioner applied to register as a permanent resident or adjust his status under the Cuban Adjustment Act. (*Id.* citing (DE 9-4, Ex. D at 3 ¶ 13)). On April 26, 2011, Petitioner's application was granted and his status as a permanent legal resident was approved retroactive to January 29, 2009. (*Id.* citing (DE 9-4, Ex. D at 3 ¶ 14)).

On March 18, 2025, after being charged with and found guilty of trafficking in cocaine in Miami-Dade County Circuit Court, case number F22-012271B (the "012271 Case"), Petitioner was sentenced to a total term of two (2) years in prison. (*Id.* at 2–3 citing (DE 9-6, Ex. F at 1–12)).

On that same date, after being charged with and found guilty of burglary of a dwelling/structure/vehicle in Miami-Dade County Circuit Court, case number F23-023917B, Petitioner was sentenced to a term of 2 years in prison to run concurrent with the sentence imposed in the 012271 Case. (*Id.* at 3 citing (DE 9-7, Ex. G at 1–14)).

On September 17, 2025, immigration and customs enforcement ("ICE") officials encountered Petitioner at a Florida Department of Corrections Facility.  (*Id.* at 3 (citing DE 9-1, Ex. A at 1–3)).  As a result, an immigration detainer was lodged notifying Petitioner that, upon release from state custody, he would be held in ICE custody pending removal proceedings.  (*Id.* citing (DE 9-4, Ex. D at 3–4 ¶¶ 23–24)).  On that same date, Petitioner was issued a NTA charging him with removability under Sections 237(a)(2)(B)(i) and 237(a)(2)(A)(iii) based on his prior convictions.  (*Id.* citing (DE 9-8, Ex. H at 1–4)).

On October 7, 2025, ICE took Petitioner into custody.  (*Id.* at 4 (citing DE 9-9, Ex. I at 1)).

On February 19, 2026, Petitioner, represented by counsel, appeared before the immigration judge ("IJ") at which time he admitted the allegations in the NTA, conceded the charge of removability under INA § 237(a)(2)(B)(i).  (*Id.* at 3 (citing DE 9-4, Ex. D at 4 ¶ 28).  As a result, the IJ agreed with Petitioner and sustained the controlled substance charge of removability.  (*Id.* (citing DE 9-4, Ex. D at 4 ¶ 29)).  On that same date, the IJ served Petitioner with a notice, scheduling a hearing for April 16, 2026.  (*Id.* at 4 citing (DE 9-10, Ex. J at 1)).

Petitioner has remained in immigration custody since October 7, 2025 and has not requested a custody redetermination hearing ("bond hearing").  (*Id.* at 4 citing (DE 9-4, Ex. D at 4 ¶ 31).  On March 12, 2026, while in immigration custody, Petitioner filed the Petition presently before me for consideration.  (DE 1 at 10).  Petitioner claims that his continued detention by immigration officials violates his constitutional rights.  (*Id.* at 6–7).  As relief, Petitioner requests that I issue an Order directing Respondent to immediately release him from custody.  (*Id.* at 7).

In the Response, Respondent argues that Petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1226(c)(1).  (DE 9).

## II.  LEGAL STANDARD

Section 2241 authorizes a district court to grant a writ of habeas corpus whenever a petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).  However, the text of § 2241 makes clear that relief is discretionary, permitting that I may—not that I shall grant relief—in order to "dispose of the matter as law *and justice* require."  *See* 28 U.S.C. §§ 2241 ("Writs of habeas corpus *may* be granted by . . . the district courts . . . ."); *see also Brown v. Davenport*, 596 U.S. 118, 128 (2022); *Wright v. West*, 505 U.S. 277, 285 (1992) (plurality opinion); *Edwards v. Vannoy*, 141 S. Ct. 1547, 1566 (2021) (Gorsuch, J., concurring).  A petition brought pursuant to 28 U.S.C. § 2241 is the proper vehicle through which to challenge the legality of a noncitizen's immigration detention.  *See Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001).  Nonetheless, "it is a petitioner's burden to establish his right to habeas relief[,] and he must prove all facts necessary to show a constitutional violation." *Blankenship v. Hall*, 542 F.3d 1253, 1270 (11th Cir. 2008) (citations omitted).

## III.  DISCUSSION

Given the allegations in the Petition and the Respondent's Response, I must consider whether Petitioner is subject to mandatory pre-removal detention under 8 U.S.C. § 1226(c). Pursuant to 8 U.S.C. § 1226(c)(1)(A), "[t]he Attorney General *shall* take into custody any alien who" is found inadmissible or deportable for reasons specified under 8 U.S.C. § 1226.  *See* 8 U.S.C. § 1226(c)(1) (emphasis added).  Thus, Section 1226(c)(1)(A) requires the detention of certain aliens by reason of having committed any offense covered in" 8 U.S.C. § 1182(a)(2).  8 U.S.C. § 1226(c)(1)(A).  Section 1182(a)(2) goes on to deem "inadmissible" any alien who has been "convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of" any state, federal, or foreign law "relating to a controlled

substance." 8 U.S.C. § 1182(a)(2)(A)(i). Notably, the INA defines a "conviction" as a "formal judgment of guilt of the alien entered by a court or, if adjudication of guilt has been withheld, where" both (1) "a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere" and (2) "the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty." 8 U.S.C. § 1101(a)(48)(A)(i)–(ii). And a "controlled substance" is defined as "a drug or other substance, or immediate precursor, including in schedule I, II, III, IV, or V of" Title 21, Chapter 13, Subchapter 1. 21 U.S.C. § 802(6).

Here, Petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c). The record is undisputed that Petitioner was convicted and sentenced for cocaine trafficking on March 2025. (DE 9-6, Ex. F). It is also undisputed that cocaine is a listed, qualifying controlled substance under 8 U.S.C. § 1182(a)(2)(A)(i), *see* 21 U.S.C. § 812, which makes Petitioner's prior conviction one "relating to a controlled substance." 8 U.S.C. § 1182(a)(2)(A)(i). Thus, this is a qualifying conviction under the plain language of the INA. *See* 8 U.S.C. § 1101(a)(48)(A)(i)–(ii); *Resendiz-Alcaraz v. U.S. Atty. Gen.*, 383 F.3d 1262, 1268 (11th Cir. 2004) (treating a guilty plea with probation penalty as conviction under 8 U.S.C. § 1101(a)(48)(A)). Accordingly, Petitioner's detention during pre-removal proceeding is mandatory under § 1226(c)(1)(A). *See Zazueta v. Barr*, 916 F.3d 708, 711 (8th Cir. 2019) ("'[E]ven in cases where adjudication is deferred the original finding or confession of guilt is sufficient to establish a conviction for purposes of the immigration laws.'") (citations omitted).

Petitioner's due process challenge to the length of his continued detention also fails on the merits. The Fifth Amendment, which applies to aliens, provides that "[n]o person shall be . . . deprived of life, liberty, or property without due process of law." U.S. Const. amend. V; *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[O]nce an alien enters the country, the legal circumstance

changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."). Thus, aliens are entitled to due process of law in deportation proceedings. *Demore v. Kim*, 538 U.S. 510, 523 (2003).

In *Demore*, the Supreme Court considered whether an alien's mandatory pre-removal detention under Section 1226(c) constituted a due process violation. *Id.* at 513–14.  The Court concluded that a six-month detention under Section 1226(c) was constitutional because "the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." *Id.* at 558–59.  In so holding, the Eleventh Circuit relied on the data provided by the Executive Office of Immigration Review ("EOIR"), which reflected that Section 1226(c) detention lasted "roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the alien chooses to appeal." *Id.* at 530.  The Court explained that this brief and limited detention was constitutional because, as a practical matter, it is a necessary aspect of the deportation process. *Id.* at 523.  In his concurrence, Justice Kennedy emphasized the importance of a temporal limitation on pre-removal detention, stating that if an alien's "continued detention became unreasonable or unjustified," the alien could be entitled to "an individualized determination as to his risk of flight and dangerousness." *Id.* at 532.

Subsequently, in *Jennings v. Rodriguez*, the Supreme Court rejected a bright-line "six-month" limitation, recognized in *Zadvydas*, as applied to aliens detained under 8 U.S.C. § 1226(c). *Jennings*, 583 U.S. 281, 297–301 (2018).  The Supreme Court specifically held that "§ 1226(c) mandates detention of any alien falling within its scope," noting that such "detention may end prior to the conclusion of removal proceedings '*only if*' the alien is released for witness-protection

purposes." *Id.* at 305–06 (emphasis added).  Although the Court concluded that Section 1226 does not impose a six-month limitation on detention, it declined to consider whether prolonged pre-removal detention becomes, at some point, unconstitutional. *Id.* at 851.  Thus, *Jennings* does not stand for the proposition that indefinite pre-removal detention is constitutional.

The Eleventh Circuit Court of Appeals' decision in *Sopo v. United States Attorney General*, 825 F.3d 1199 (11th Cir. 2016) ("*Sopo I*"),[1] is instructive on this point.[2]  The Eleventh Circuit in *Sopo I* adopted a case-by-case approach, requiring assessment of all the circumstances of any given case to determine whether detention without opportunity for a bond hearing is unreasonable. *Id.* at 1215.  The *Sopo* court explained that "several factors should guide a district court in determining whether a particular criminal alien's continued detention, as required by § 1226(c) is necessary to fulfilling Congress's aims of removing criminal aliens while preventing flight and recidivism." *Id.* at 1217.  Specifically, *Sopo I* set forth the following five non-exhaustive factors to consider when determining the reasonableness of an alien's continued detention:  (1) "the amount of time that the criminal alien has been in detention without a bond hearing;" (2) "why the removal proceedings have been protracted;" (3) "whether it will be possible to remove the criminal alien after there is a final order of removal;" (4) "whether the alien's civil immigration detention exceeds the time the alien spent in prison for the crime that rendered him removable;" and (5) "whether the facility for

---

[1] *See Sopo v. U.S. Att'y Gen.*, 825 F.3d 1199, 1215–17 (11th Cir. 2016) ("*Sopo I*"), vacated by *Sopo v. U.S. Att'y Gen.*, 890 F.3d 952 (11th Cir. 2018) ("*Sopo II*").

[2] Although *Sopo* was abrogated by *Jennings* to the extent it concluded that Section 1226(c) implicitly required a detention hearing, it remains persuasive authority in determining whether prolonged pre-removal detention passes constitutional muster. In sum, although *Jennings* rejected a statutory challenge to Section 1226, it did not "foreclose as-applied challenges—that is, constitutional challenges to applications of the statute." *Nielsen v. Preap*, 139 S. Ct. 954, 972 (2019).

the civil immigration detention is meaningfully different from a penal institution for criminal detention." *Sopo I*, 825 F.3d at 1217–18.

Under the first factor, the Eleventh Court found in *Sopo I* that "there is little chance that a criminal alien's detention is unreasonable until at least the six-month mark," but noted that detention may "become unreasonable by the one-year mark, depending on the facts of the case." *Id.* at 1217 (citations omitted). The Court affirmatively held that "aliens should [not] be punished for pursuing avenues of relief and appeals," but clarified that "the district court may examine the record to determine whether the alien sought repeated or unnecessary continuances, or filed frivolous claims and appeals." *Id.* at 1218 (citations omitted). "If the balance tips in the alien's favor, the district court must grant the § 2241 habeas petition and order the government to afford the criminal alien an individualized bond inquiry." *Id.* at 1219.

Although *Sopo I* was vacated by the Eleventh Circuit because the petitioner was released from immigration custody while his petition for rehearing was pending, *see Sopo II*, 890 F.3d at 953–54, "district courts in this Circuit . . . continue to look to *Sopo I*'s multi-factor analysis to determine whether prolonged detention under § 1226(c) does, in fact, violate an alien's right to procedural due process." *See, e.g.*, *Oscar v. Ripe*, 751 F. Supp. 3d 1324, 1330–31 (S.D. Fla. 2024) (Middlebrooks, J.) (collecting cases).

At the time Petitioner filed the Petition, he had been detained for approximately five months. Petitioner was taken into immigration custody on October 7, 2025, and filed the Petition less than six months later on March 12, 2026. His detention has therefore not become unreasonably prolonged. *See Demore*, 538 U.,S. 529–31 (holding petitioner's detention for six months— "somewhat longer than the average"—was "constitutionally permissible"); *see also Sopo I*, 825 F.3d at 1217. When considering the *Sopo I* factors, I find Petitioner's detention has not been

unreasonably prolonged and there does not appear to have been any delay in the progression of the case. But even looking beyond the length of Petitioner's confinement, Petitioner does not dispute that his continued detention is not due to any dilatoriness by the government. *See Demore*, 538 U.S. at 532–33 (Kennedy, J., concurring); *see also Sopo I*, 825 F.3d at 1218. Additionally, Petitioner's prior conviction renders him "inadmissible" under § 1182(a)(2), and Petitioner fails to dispute that his removal will be "possible" once his removability has been finalized. *Sopo I*, 825 F.3d at 1218. Consequently, the *Sopo I* factors weigh against Petitioner.

Alternatively, even if Petitioner's removal becomes unreasonably delayed, I find Petitioner has not met his burden of demonstrating that he deserves the relief requested—immediate release from custody. *See id.* at 1217–19. The exercise of my discretionary authority necessarily requires consideration of all the facts and circumstances surrounding Petitioner's detention by immigration officials. Petitioner was previously granted release by immigration officials but failed to remain at liberty without violating the terms and conditions of his release, resulting in Petitioner's detention. While I have the power to grant the petition in part, I am "not bound in every case to exercise such a power." *Ex Parte Royall*, 6 S.Ct. 734, 740 (1886) (affirming that a federal habeas corpus court has the power to discharge a pretrial detainee but was not bound to do so in every case). Thus, equitable principles dictate that I deny the Petition. *See Withrow v. Williams*, 507 U.S. 680, 716–19 (1993).

## IV. CONCLUSION

For all the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** as follows:

1.     The Petition (DE 1) is **DENIED**;

2.        All pending motions not otherwise ruled upon are **DENIED, as moot**; and

3.        The Clerk shall **CLOSE** this case.

**SIGNED** in Chambers at West Palm Beach, Florida this <u>29th</u> day of May, 2026.

Donald M. Middlebrooks
United States District Judge

**Copies furnished to**:

**Michel Avila De La Nuez,** *Pro Se* **a/k/a**
**Michel Aguila De La Ruiz,** *Pro Se*
Alien # 088848800
Krome North Service Processing Center
Inmate Mail/Parcels
18201 SW 12th Street
Miami, FL 33194

**Kimberly Marie Montgomery, Special AUSA**
United States Attorney's Office
99 N.E. 4th Street, Suite 300
Miami, FL  33132
Email:  Kimberly.montgomery@usdoj.gov